# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **ELOISA QUEIROZ GOMES,**<br>EDILAMAR ERICA BARBOSA GOMES,<br>ADAILTON RODRIGUES GOMES, and<br>E.D.A.G, a minor, | Case No. 1:25-cv-11964 |
| Plaintiffs, | |
| v. | **COMPLAINT FOR DECLARATORY, INJUNCTIVE, AND MANDAMUS RELIEF** |
| **PAMELA BONDI**,<br>U.S. Attorney General; | **ORAL ARGUMENT REQUESTED** |
| **KIKA SCOTT**,<br>Senior Official Performing the Duties of the<br>Director, U.S. Citizenship and Immigration<br>Services; | |
| **KRISTI NOEM**,<br>Secretary, U.S. Department of Homeland<br>Security; | |
| **LAURA B. ZUCHOWSKI**,<br>Director, U.S. Citizenship and Immigration<br>Services, Vermont Service Center; | |
| **TODD M. LYONS**,<br>Acting Director, U.S. Immigration and Customs<br>Enforcement; | |
| **PATRICIA HYDE**,<br>Acting Director of Boston Field Office,<br>U.S. Immigration and Customs<br>Enforcement, | |
| Defendants. | |

Plaintiffs Eloisa Queiroz Gomes, Edilamar Erica Barbosa Gomes, Adailton Rodrigues Gomes, and E.D.A.G., through their attorney, allege based upon personal knowledge, relevant documents, and information and belief, as follows:

## I.    <u>INTRODUCTION</u>

1. Plaintiffs are Brazilian nationals who have applied to the United States Citizenship and Immigration Services ("USCIS") for T Nonimmigrant Visa Status. Ms. Queiroz Gomes, a child, filed an I-914 Application for T Nonimmigrant Status as the victim of a severe form of trafficking in persons. Then a minor, she included her parents, Edilamar Erica Barbosa Gomes (Ms. Barbosa Gomes) and Adailton Rodrigues Gomes (Mr. Rodrigues Gomes), and her brother, E.D.A.G. as derivative applicants.

2. Concurrent with that application, and in line with the T Visa implementing regulations, Plaintiffs each filed an I-192 Application for Advance Permission to Enter as Nonimmigrant ("I-192 Waiver") which, if granted, would forgive inadmissibility stemming from their immigration history, including a removal order issued against them, which became a final order of removal when the Board of Immigration Appeals dismissed their appeal on May 30, 2024. The applications were received by USCIS on September 3, 2024.

3. As soon as the applications were filed, Plaintiffs were afforded a "pause" in their departure plans by ICE, which had been custom at the time due to the pending relief available to them while they remained here in the United States.

4. On June 2, 2025, ICE contacted Ms. Barbosa Gomes to demand that she present herself to the Intensive Supervision Appearance Program ("ISAP") in Burlington, MA for a check-in. As

she had in the past, she presented herself to the office on June 4, 2025 where she was detained. She continues to remain in ICE's custody.

5. Ms. Barbosa Gomes faces imminent removal from the United States as counsel for the Government has confirmed that they have secured travel documents for her. She is the primary caregiver to her two children, Ms. Queiroz Gomes and her minor son. Since Immigration and Customs Enforcement ("ICE") began increased public enforcement operations in 2025, Ms. Queiroz Gomes' anxiety has become completely debilitating. Id. She heartbreakingly chose to end her engagement, seeing herself only as a 'burden' to her partner, and moved back in with her parents to receive more support. Id. Her mental health has only continued to deteriorate with the ongoing detention of her mother, Ms. Barbosa Gomes, who was arrested by ICE during a routine check-in on June 4, 2025. Id. Without Ms. Barbosa Gomes at home, Ms. Queiroz Gomes and her father are struggling to manage their own grief and anxiety as they alternate shifts caring for her younger brother, who has been inconsolable since his mother's arrest.

6. As their applications were filed after August 28, 2024, USCIS conducted an initial review of the applications and determined that they were not "bona fide" pursuant to 8 C.F.R. § 214.205. Through the BFD process, USCIS may exercise discretion to grant deferred action and a BFD Employment Authorization Document (BFD EAD) to noncitizens with pending, bona fide applications for T nonimmigrant status.

7. USCIS erroneously concluded that Ms. Queiroz Gomes' application was not bona fide, finding that the application was not complete or her initial background security checks presented national security concerns. Consequently, each of the derivative applicants' bona fide adjudications were denied, as either their applications were incomplete or they also presented

national security concerns.

8. Plaintiffs seek an order compelling Defendants, Pamela Bondi ("Defendant Bondi"), Kika Scott ("Defendant Scott"), Kristi Noem ("Defendant Noem"), and Laura B. Zuchowski ("Defendant Zuchowski") (hereinafter collectively "Defendants"), to immediately adjudicate their I-914 Application for T Nonimmigrant Status and I-192 Applications for Advance Permission to Enter as a Nonimmigrant under the mandamus status, 28 U.S.C. § 1361, and the Administrative Procedure Act ("APA"), 5 U.S.C. §§555(b) and 706(1), and the Fifth Amendment to the United States Constitution. Plaintiffs also seek an order holding unlawful and setting aside the denial and compelling Defendants Pamela Bondi ("Defendant Bondi"), Kika Scott ("Defendant Scott"), Kristi Noem ("Defendant Noem"), and Laura B. Zuchowski ("Defendant Zuchowski") to reconsider their October 18, 2024 decision on whether the applications are bona fide. Lastly, Plaintiffs seek an order compelling Defendants Todd M. Lyons ("Defendant Lyons") and Patricia Hyde ("Defendant Hyde") to coordinate with USCIS in expediting such adjudication and to prevent their removal while such applications are pending.

## II.    JURISDICTION

9. This action arises under the Constitution of the United States and the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101 *et seq*. This Court has jurisdiction pursuant to 28 U.S.C. § 1361, the mandamus statute; 28 U.S.C. § 1331, general federal question jurisdiction.

## III.    VENUE

10. Venue in this case lies in the United States District Court for Vermont pursuant to 28 U.S.C. §1391. Where the defendant is an officer or employee of the United States, a civil action may be brought in any judicial district in which "a substantial part of the events or omissions giving rise to the claim occurred […]." 28 U.S.C. § 1391(e)(1)(B). In this case, the United States District Court for Massachusetts is the judicial district in which a substantial part of the events or omissions giving rise to Plaintiffs' claim occurred because Ms. Queiroz Gomez was trafficked in Massachusetts, and sought relief by filing the T Visa applications based on that victimization.

## IV.    <u>PARTIES</u>

11. The Plaintiffs in this action are Eloisa Queiroz Gomes, Edilamar Erica Barbosa Gomes, Adailton Rodrigues Gomes, and E.D.A.G., a married couple and their children, all nationals of Brazil. Prior to Ms. Barbosa Gomes' detention, they resided together in Clinton, MA. Plaintiff Ms. Barbosa Gomes is now detained in El Paso, TX. Ms. Queiroz Gomes is a survivor of labor trafficking who sought T Nonimmigrant Status by filing her applications, personal statement, and supporting documents with the United States Citizenship and Immigration Services ("USCIS") Vermont Service Center.

12. The first Defendant in this action is Pamela Bondi, U.S. Attorney General. She is being sued in her official capacity. Defendant Bondi is the Attorney General of the United States, and she is responsible for the Department of Homeland Security ("DHS")'s implementation and enforcement of the Immigration and Nationality Act ("INA").

13. The second Defendant in this action is Kika Scott, the Senior Official Performing the Duties of the Director of U.S. Citizenship and Immigration Services ("USCIS"). She is being sued in her official capacity. Defendant Scott is the Senior Official Performing the Duties of the Director of USCIS, a component of DHS. In that capacity, she has direct authority over all USCIS policies, procedures, and practices relating to the processing and adjudication of applications for certain I-914 applications and I-192 applications.

14. The third Defendant in this action is Kristi Noem, Secretary of the U.S. Department of Homeland Security. She is being sued in her official capacity. Defendant Noem is the Secretary of the Department of Homeland Security, and responsible for the administration of USCIS, as well as the implementation and enforcement of the INA.

15. The fourth Defendant in this action is Laura B. Zuchowski, Director of the Vermont Service Center. She is being sued in her official capacity. She exercises authority over all aspects of the operation of the Vermont Service Center, including overseeing the adjudication of Plaintiffs' I-914 Applications for T Nonimmigrant Status and I-192 Waiver Applications.

16. The fifth Defendant in this action is Todd M. Lyons, Acting Director of U.S. Immigration and Customs Enforcement. He is sued in his official capacity. As Director of ICE, Defendant Lyons is the head of the federal agency responsible for all immigration enforcement in the United States.

17. The sixth Defendant in this action is Patricia Hyde, Acting Director of the Boston Field Office of the U.S. Immigration and Customs Enforcement. She is sued in her official capacity. As Acting Director of the Boston Field Office, Defendant Hyde will determine whether Plaintiffs should be taken into custody, whether their removal will be effectuated prior to the adjudication of the application for T Nonimmigrant Status and whether to request expedited review of the

application for T Nonimmigrant Status from USCIS and await its answer.

## V.    LEGAL BACKGROUND

18. On October 28, 2000, Congress created a new nonimmigrant visa classification, referred to as a T Visa, through the passage of the Victims of Trafficking and Violence Protection Act of 2000 (VTVPA). See Pub. L. No. 106-386, § 1513(a)(2)(B), 114 Stat. 1464, 1533 (codified at 8 U.S.C. §§7101-2. The nonimmigrant T visa allows noncitizens who were the victims of a severe form of trafficking in persons to apply for and receive a nonimmigrant visa.  8 U.S.C. § 1101(a)(15)(T); see also 8 C.F.R. § 214.202. 22. T nonimmigrant status is described as being available to (as relevant here) a noncitizen who has a been a victim of a severe form of trafficking in persons, who is physically present in the United States on account of such trafficking, has complied with any reasonable request for assistance in the Federal, State or local investigation or prosecution of acts of trafficking and would suffer extreme hardship involving unusual or severe harm upon removal.

19. Congress' intent in creating the T Visa program, similar to the U Visa program, was "to combat trafficking in persons, a contemporary manifestation of slavery whose victims are predominantly women and children, to ensure just and effective punishment of traffickers, and to protect their victims." 8 U.S.C. § 7101(a). The Congressional intent in providing protection to immigrant survivors of trafficking within the United States was to compel victims to come forward, as their reluctance to cooperate with law enforcement drastically impacted the government's ability to combat human trafficking. By providing survivors of human trafficking with an avenue for gaining lawful immigration status, the T visa encourages victims

to cooperate with law enforcement agencies, thus strengthening relations between law enforcement and immigrant communities.

20. Although the T visa is available to noncitizens physically present in the United States, it is not available to those who survived trafficking if he or she is outside of the United States. This is because a core requirement of the T visa classification is that the noncitizen be "physically present … on account of such trafficking." 8 U.S.C. § 1101(a)(15)(T)(i)(II). This requirement has been interpreted to include noncitizens who were subject to trafficking in the past and whose presence in the United States is directly related to that victimization "regardless of the length of time that has passed between the trafficking and the filing of the Application for T nonimmigrant status." 8 C.F.R. § 214.207(a)(3)-(4). However, the regulations make clear that departure from the United States, including removal at any time after the act of trafficking renders an individual not present as a result of trafficking. 8 C.F.R. § 214.207(b).

21. To apply for a T Visa, an applicant must file with USCIS a Form I-914 Application for T Nonimmigrant Status, a signed statement by the applicant, and evidence of the following: the applicant's victimization; physical presence in the United States on account of the trafficking; compliance with any reasonable request for assistance in a law enforcement investigation or prosecution of acts of trafficking (unless an exception due to age of the applicant or trauma applies); and evidence that the applicant would suffer extreme hardship involving unusual and severe harm upon removal. An applicant who is inadmissible may seek a waiver of such inadmissibility pursuant to 8 U.S.C. §1182(d)(13) and (d)(3)(A)(ii) by concurrently filing an I-192 Application for Advance Permission to Enter as a Nonimmigrant.

22. Upon issuance, the T Visa provides noncitizens with up to four years of nonimmigrant status and work authorization. See INA § 214(o)(7)(A); 8 C.F.R. § 214.203(a). Moreover, upon

residing in the United States in T nonimmigrant status continuously for three years, noncitizens may apply for permanent residency. <u>See</u> 8 U.S.C. § 1255(l).

23. A noncitizen is eligible to apply for T nonimmigrant status even if she has a removal order against her. Indeed, to the extent that any immigration history may render a noncitizen inadmissible, such inadmissibility may be waived by the concurrent (or later) filing of waiver pursuant to 8 U.S.C. §1182(d)(13) and (d)(3)(A)(ii). Additionally, by operation of law, the approval of a T visa cancels any final order of removal to which the applicant may be subject. 8 C.F.R. § 214.204(o)(1).

24. Under 8 C.F.R. § 214.205(a), USCIS will conduct an initial review to determine if the application is bona fide for all applications filed after August 28, 2024. Per 8 C.F.R. § 214.205(g)(1), if USCIS determines that an application is bona fide, it will stay the execution of any final removal order. Additionally, by operation of law, the approval of a T visa cancels any final order of removal to which the applicant may be subject. 8 C.F.R. § 214.204(o)(1).

25. USCIS determines a principal application is bona fide if: the principal applicant properly filed a complete Application for T Nonimmigrant Status (Form I-914); and USCIS received and reviewed the results of the principal applicant's initial background checks and determined that the applicant does not present national security concerns. <u>Id.</u>

26. Prior to January 30, 2025, ICE had acknowledged that utilizing a victim-centered approach to dealing with noncitizen crime victims "minimizes any chilling effect that civil immigration enforcement actions may have on the willingness and ability of noncitizen crime victims to contact law enforcement, participate in investigations and prosecutions, pursue justice, and seek benefits." <u>See</u> ICE Directive, 11005.3 *Using a Victim-Centered Approach with Noncitizen Crime Victims*, dated August 10, 2021. To that end, ICE was instructed to exercise

prosecutorial discretion by "refrain[ing] from taking civil immigration enforcement action against known beneficiaries of victim-based immigration benefits and those known to have a pending application for such benefits." Id. Additionally, ICE was directed to coordinate with USCIS to "seek expedited adjudication of victim-based immigration applications and petitions." Id. The directive also provided: "When a noncitizen has a pending or approved application or petition for a victim-based immigration benefit, absent exceptional circumstances, ICE will exercise discretion to defer decisions on civil immigration enforcement against the applicant [] until USCIS makes a final determination on the pending victim-based immigration benefit applications … or in the case of a T Visa, [] until USCIS makes a negative bona fide or prima facie determination." Id.

27. Consistent with the victim-centered approach, during the last notice and comment period of the T Visa regulations in 2024, commenters requested DHS add language to the final rule that requires ICE to take affirmative steps to seek a [bona fide determination] from USCIS for detainees with pending applications for T nonimmigrant status. DHS declined to add such language as it was "unnecessary." Referencing ICE Directive 11005.3, DHS declined to add such language since ICE was directed to coordinate with USCIS to seek the expedited adjudication of victim-based immigration applications and petitions. See Federal Register, Vol. 89, No. 84 (April 30, 2024). DHS, however, noted that USCIS will continue to coordinate with ICE on this process. Id.

28. Subsequently, ICE published new policy guidance, Directive 11005.4, which rescinds the Victim-Centered Approach Directive.[1] See Interim Guidance on Civil Immigration Enforcement Actions Involving Current or Potential Beneficiaries of Victim-Based

---

[1] It is unclear when this Interim Guidance was published as it is not dated.

Immigration Benefits. Among other changes, the Interim Guidance states: "ICE will no longer routinely request expedited adjudications from USCIS. ICE officers and agents may continue to do so subject to a case-by-case determination that it is in ICE's best interests." See id. Notably, the ICE Factsheet on the Victim-Centered Approach Memo remains on the ICE website and affirmatively states: "When alien [sic] have pending or approved applications or petitions for victim-based immigration benefits, ICE will refrain from taking enforcement actions against the applicant or petitioner until USCIS makes a: Final determination for pending T Visa applications …". See, Using a Victim-Centered Approach with Alien Crime Victims, ICE (August 8, 2023) *available at* https://www.ice.gov/factsheets/using-victim-centered-approach-with-victims. It reiterates: "ICE recognizes the significant law enforcement interest in active victim-witnesses remaining in the United States and will exercise prosecutorial discretion in appropriate circumstances to facilitate access to justice and victim-based immigration benefits by alien crime victims. To that end, absent exceptional circumstances, ICE officers will refrain from taking civil immigration enforcement actions against aliens who are known beneficiaries of victim-based immigration benefits or those known to have pending applications for such benefits." Id.


## VI.    STATEMENT OF FACTS


29. Plaintiffs, family of four, are nationals of Brazil. After the Immigration Judge denied their asylum applications in September 2022, the family appealed the decision to the Board of Immigration Appeals ("BIA"). The Board of Immigration Appeals dismissed the appeal on May 30, 2024, rendering the order of removal final.

30. Plaintiffs sought new counsel, who identified that Ms. Queiroz Gomes had been victimized by her employer, Pruller Restaurant, from June 2022 to December 2022. Through counsel, Ms. Queiroz Gomes reported her victimization to the Department of Labor and filed an I-914 Application for T Nonimmigrant Status alongside a form I-192 Application for Advance Permission to Enter as Nonimmigrant, requesting a waiver of all applicable admissibility grounds. Her parents and brother filed derivative applications and waiver applications. These forms were filed at the USCIS Vermont Service Center (Receipt Nos. EAC2429750108 (I-194 Ms. Queiroz Gomes); EAC2429750117 (I-192 Mr. Queiroz Gomes); EAC2429750125 (I-914A Ms. Barbosa Gomes); EAC2429750134 (I-192 Ms. Barbosa Gomes); EAC2429750161 (I-914A Mr. Rodrigues Gomes); EAC2429750167 (I-192 Mr. Rodrigues Gomes; EAC2429750188 (I-914A E.D.A.G.); and EAC2429750194 (I-192 E.D.A.G.). See Exhibit 1, Receipt Notices.

31. Pursuant to ICE Directive 11005.3, which was in effect at the time of filing, Plaintiffs were afforded a "pause" in their departure plan by ICE. Ms. Barbosa Gomes was affixed with GPS monitoring and complied with all ICE check-ins. On June 4, 2025, during a check-in at the ISAP office, Ms. Barbosa Gomes was detained.

32. Her detention has resulted in significant hardship on the family, who rely on her for their financial and emotional stability. Her daughter's long struggle with anxiety was worsened during her trafficking victimization, but has since deteriorated further in her mother's absence. Without her presence here in the United States, the family would struggle immensely.

33. On October 18, 2024, USCIS sent correspondence to Plaintiffs indicating that the applications were not bona fide. See Exhibit 2, Correspondence. The decision lacked reasoning, claiming broadly that either Ms. Queiroz Gomes (the principal applicant)'s application was not

complete, or background checks presented national security concerns. Consequently, each of the derivative applicants' applications were found not to be bona fide for the same possible reasons.

34. After such correspondence, USCIS sent further notice that it was able to reuse biometric data and fingerprints to conduct background checks.

35. The applications remain pending; nearly 10 months have elapsed.

36. The USCIS website reports that 80% of Applications for T Nonimmigrant Status (I-914s) are completed within 22.5 months.

37. On information and belief, ICE is seeking to detain and swiftly remove noncitizens with final orders of removal, generally ignoring whether there is a pending application for humanitarian relief that would excuse the removal order, such as an I-914.

38. Also on information and belief, while ICE has the power to request that USCIS expedite review of an application for T Nonimmigrant Status for someone with a final order of removal against whom ICE plans to take action, it has been refusing to do since late January 2025.

## VII.    COUNT I – MANDAMUS

39. Plaintiff re-alleges and incorporates by reference, as if fully set forth herein, the allegations in Paragraphs 1-38 above.

40. The mandamus statute permits a court to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff.  28 U.S.C. § 1361.

41. A mandamus plaintiff must demonstrate that: "(1) there is a clear right to the relief sought; (2) the Government has a plainly defined and peremptory duty to perform the act in question; and

(3) there is no other adequate remedy available." <u>Benzman v. Whitman</u>, 523 F.3d 119, 133 (2d Cir. 2008).

42. Plaintiffs have a clear right to the relief sought: the *adjudication* of their T visa applications and related waiver applications.  <u>See</u> 8 U.S.C. § 1101(a)(15)(T); 8 C.F.R. § 214.200 et seq. Despite Plaintiffs' removal orders, they still clearly fall within the zone of interest contemplated by the T visa statute and its regulations. The regulations require recently filed T visa applications to undergo an "initial review" to determine if they are bona fide. 8 C.F.R. § 214.205(a); (g)(1). If USCIS determines that an application is bona fide, the final removal order will be automatically stayed, "and the stay will remain in effect until a final decision is made on the Application for T Nonimmigrant Status."  8 C.F.R. § 214.204(b)(2)(iii).

43. Plaintiffs also have a clear right not to be removed while their T visa applications are pending. ICE was previously instructed to refrain "from taking civil immigration enforcement action against . . . those known to have a pending application for [victim-based immigration] benefits." ICE Directive 11005.3. This instruction was not codified only because ICE was directed to coordinate with USCIS to seek the expedited adjudication of victim-based applications. <u>See</u> Federal Register, Vol. 89, No. 84 (April 30, 2024). Despite a new ICE directive that appears to have rescinded Directive 11005.3, <u>see</u> ICE Directive 11005.4, the language of Directive 11005.3 still appears on the ICE website and indicates that ICE must still coordinate with USCIS for expedited adjudication of Plaintiffs' T visas.

44. Defendants USCIS have a plainly defined and peremptory duty to adjudicate Plaintiff's T visa application and associated waiver application. While it may be within Defendants' discretion whether to <u>grant</u> Plaintiff's application, they have a nondiscretionary duty to timely <u>adjudicate</u> Plaintiff's application. <u>See</u>, <u>e.g.</u>, <u>Villa v. DHS</u>, 607 F.Supp.2d 359, 363 (N.D. N.Y. 2009)

("While it is within the Attorney General's discretion to grant or deny an application . . . it is not within his discretion to not adjudicate at all); Arevalo v. Ashcroft, 344 F.3d 1, 15 (1st Cir. 2003) (holding that a noncitizen has "a right to seek relief" which is "analytically separate and distinct from a right to the relief itself"); Iddir v. INS, 301 F.3d 492, 500 (7th Cir. 2002) (right to diversity visa application adjudication); Patel v. Reno, 134 F.3d 929, 933 (9th Cir. 1997) (right to visa application adjudication); Yu v. Brown, 36 F. Supp. 2d 922, 930-31 (D.N.M. 1999) (right to Special Immigrant Juvenile application adjudication).

45. Defendants' duty is especially defined in the present context: where Plaintiffs could be removed from the United States and rendered ineligible for T visa relief if Defendants do not immediately adjudicate their applications.  See 8 C.F.R. § 214.207(b).

46. Defendants ICE have a plainly defined and peremptory duty not to remove Plaintiffs while their T visa application is pending. ICE has been instructed to coordinate with USCIS to expedite applications for victim-based benefits such as T visas. ICE Directive 11005.3; Federal Register, Vol. 89, No. 84 (April 30, 2024). Once a bona fide determination is issued, removal is automatically stayed. 8 C.F.R. § 214.205(g)(1). Additionally, by operation of law, the approval of a T visa cancels any final order of removal to which the applicant may be subject. 8 C.F.R. § 214.204(o)(1).

47. No other remedy offering adequate relief is available.

48. If USCIS does not adjudicate Plaintiff's T visa application, Plaintiffs may be physically removed from the United States. If Ms. Queiroz Gomes is removed, she would be rendered ineligible for the visa. 8 C.F.R. § 214.207(b). If Ms. Queiroz Gomes is rendered ineligible, her family would not be able to derive the status either.

49. Plaintiff presents several facts addressing the TRAC factors. See Telecommunications

Research & Action Center v. FCC, 750 F.2d 70, 80 (D.C. Cir. 1984). A quick adjudication of Plaintiffs' pending T visa application is reasonable and feasible. The T visa regulations specifically contemplate an automatic stay of removal when a bona fide determination is issued, indicating Congress's intent to protect victims of trafficking from removal while it adjudicates the pending T visa application. Human welfare is involved; ICE has detained Ms. Barbosa Gomes for nearly one month now as it seeks to execute the final order of removal. Separation of either parent from their children, especially Ms. Queiroz Gomes who has severe anxiety due to her victimization, would be inhumane. She relies on her mother for her emotional well-being, a relationship that has since fractured due to her mother's ongoing detention. Neither USCIS nor ICE would be prejudiced by an order requiring USCIS to adjudicate Plaintiffs' T visa applications. USCIS does not have cases more urgent than a person who is at immediate risk of removal and being rendered illegible for T visa status by operation of law. The case has already been pending for nearly 10 months. ICE directives have required ICE to coordinate with USCIS to expedite adjudication of victim-based applications such as T visas, and ICE may still continue to expedite adjudication of these applications on a case-by-case basis. ICE Directives 11005.4; 11005.3. The interests prejudiced by the delay are merely ICE's wishes to effectuate the maximum number of physical removals possible in order to meet political goals; it is clear that neither Plaintiff's presence in the United States is harmful to the general public.

### VIII.    COUNT II – AGENCY ACTION UNLAWFULLY WITHHELD AND UNREASONABLY DELAYED

50. Plaintiff re-alleges and incorporates by reference, as if fully set forth herein, the allegations

set forth in Paragraphs 1-38 above.

51. Defendants' failure to adjudicate Plaintiffs' T visa applications and associated waiver applications constitutes an unreasonable failure to act in violation of the Administrative Procedures Act. See 5 U.S.C. § 702 et. seq.

52. The APA requires each agency to act within a reasonable time and creates a non-discretionary duty to conclude agency matters. 5 U.S.C. § 555(b); Yue Yu v. Brown, 36 F. Supp. 2d 922, 931 (D.N.M. Jan. 28, 1999).

53. A violation of this duty is sufficient for mandamus relief.

54. The APA permits this Honorable Court to "compel agency action unlawfully withheld or unreasonably delayed" where the Plaintiff asserts that the Defendants have failed to take a discrete action. 5 U.S.C. § 706(1). A failure to act as agency action is a failure to take a discrete, required action. Norton v. Southern Utah Wilderness Alliance, 542 U.S. 55, 62-63 (2004).

55. Defendants have failed to perform the discrete, non-discretionary task of adjudicating Plaintiffs' T visa applications and associated waiver applications. Plaintiff's application has been pending beyond a reasonable time for completion.

56. The combined unreasonable delay and failure to act on Plaintiff's T visa application and waiver application can be attributed to Defendants' failure to adhere to their legal duty to avoid unreasonable delays under the INA, the APA, and the applicable rules and regulations.

57. There are no alternative adequate or reasonable forms of relief available to Plaintiff.


**IX.     COUNT III – HOLD UNLAWFUL AND SET ASIDE AGENCY ACTION FOUND TO BE ARBITRARY, CAPRICIOUS, AN ABUSE OF DISCRETION, OR OTEHRWISE NOT IN ACCORDANCE WITH THE LAW**

58. Plaintiffs re-allege and incorporate by reference, as if fully set forth herein, the allegations in Paragraphs 1-38 above.

59. Under the Administrative Procedure Act's (APA) arbitrary or capricious standard, a court must ensure, among other things, that the agency has offered a satisfactory explanation for its action, including a rational connection between the facts found and the choice made. Ohio v. Environmental Protection Agency, 603 U.S.279 (2024).

60. Defendants' denial of the Plaintiffs' bona fide determination is arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with their laws.

61. After initial review, USCIS will deem an Application for T Nonimmigrant Status bona fide if: (i) The applicant has submitted a properly filed and complete Application for T Nonimmigrant Status; (ii) The applicant has submitted a signed personal statement; and (iii) The results of initial background checks are complete, have been reviewed, and do not present national security concerns.

62. Here, Plaintiffs applications were receipted by USCIS on September 3, 2024 and correspondence denying bona fide determinations is dated October 18, 2024, before USCIS sent correspondence related to the reuse of biometric data for background checks.

63. Upon information and belief, biometrics checks could not have been completed and reviewed before the bona fide determination was adjudicated and denied on October 18, 2024. Therefore, it is exceedingly unlikely that any of the Plaintiffs could be found to present national security concerns.

64. Even if background checks had been complete at the time of adjudication, any finding that the Plaintiffs present national security concerns is entirely unfounded, as none of the Plaintiffs have any criminal convictions anywhere in the world. Ms. Queiroz Gomes' one blemish on

her record is a citation for unlicensed operation of a motor vehicle and speeding, for which she was found responsible and paid a fine.

65. Thus, USCIS denied to extend bona fide status to the Plaintiffs because either the applicant did not properly complete her application or she did not submit a signed, personal statement. Otherwise, the agency "relied on factors which Congress had not intended it to consider." See Soler v. G. & U., Inc., 833 F.2d 1104 (2d Cir. 1987, cert. denied 488 U.S. 832.

66. Plaintiffs submitted signed, completed applications and principal applicant Ms. Queiroz Gomes submitted a signed personal statement attesting to her victimization. In fact, if any of the applications or the declaration were incomplete, USCIS likely would have rejected the applications as incomplete, rather than issuing receipt notices.

67. As Plaintiffs have met all three criteria for having qualified for bona fide determinations, the agency action denying such determination must be held unlawful and set aside. The denial of bona fide status is arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with the law.

## X.    COUNT IV – VIOLATION OF RIGHT TO DUE PROCESS OF LAW

68. Plaintiff re-alleges and incorporates by reference, as if fully set forth herein, the allegations in Paragraphs 1-36 above.

69. Defendants' refusal to act denies Plaintiff due process of the laws as guaranteed by the Fifth Amendment of the United States Constitution.

70. The right to fundamental fairness in administrative adjudication is protected by the Due Process Clause of the Fifth Amendment to the United States Constitution.  Reno v. Flores, 507

U.S. 292, 306 (1993) ("It is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings"). Plaintiffs may seek redress in this Court for Defendants' combined failures to provide a reasonable and just framework of adjudication in accordance with applicable law.

71. Defendants' failure to act has violated Plaintiffs' due process rights.

72. Plaintiffs have a liberty interest in obtaining a meaningful determination on their T visa applications before their removal is effectuated. See Mathews v. Elridge, 424 U.S. 319, 332 (1976); S.N.C. v. Sessions, No. 18 CIV. 7680 (LGS), 2018 WL 6175902, at *6 (S.D.N.Y. Nov. 26, 2018) (unpub.). The T visa is "a specific form of relief that Congress made available for victims of . . . human trafficking, including those with final orders of removal pending against them." Id. The automatic stay that takes effect once a bona fide determination is issued indicates Congress' intent in protecting trafficking victims from removal. 8 C.F.R. § 214.205(g)(1). Removal itself "implicates substantial liberty interests." Fatty v. Nielsen, No. C17-1535-MJP, 2018 WL 3491278, at *1 (W.D. Wash. July 20, 2018) (unpub.).

73. Plaintiffs face a risk of "erroneous deprivation" of their liberty interests. Mathews, 424 U.S. at 332. If they are removed before the T visa is adjudicated, they will be unable to pursue the application because Ms. Queiroz Gomes will no longer have the required physical presence. 8 C.F.R. § 214.11(g). On the contrary, if she is granted T nonimmigrant status, she and her family will be permitted to remain in the United States in nonimmigrant status. 8 C.F.R. § 214.11(d)(9); see also Fatty, 2018 WL 3491278, at *2-3.

74. The government's interest is not significantly affected by adjudicating Plaintiffs' T visa applications. See Mathews, 424 U.S. at 332. The congressional intent of the T visa is to provide protection to immigrant survivors of trafficking to compel them to come forward and

cooperate with law enforcement to combat said trafficking. <u>See</u> 8 U.S.C. § 7101(a). Immediately adjudicating Plaintiff's T visa application furthers that goal. <u>See, e.g.</u> <u>Fatty</u>, 2018 WL 3491278, at \*3.

75. Defendants' failure to act has irrevocably harmed Plaintiffs by prohibiting her from moving forward with his T visa application and putting her entire family at risk of imminent deportation from the United States – an action that will also deprive her of the ability to apply for T status altogether.

## XI.    <u>COUNT V – DECLARATORY JUDGMENT</u>

76. Plaintiffs re-allege and incorporates by reference, as if fully set forth herein, the allegations in Paragraphs 1-36 above.

77. The Court has jurisdiction, *de novo*, to declare that Plaintiffs are entitled to have their T visa applications and waiver applications immediately adjudicated. <u>See</u> 28 U.S.C. § 2201 et seq.

78. Defendants owe Plaintiffs a duty to act on their applications.

79. Defendants have failed to exercise this duty.

## <u>PRAYER FOR RELIEF</u>

Wherefore, Plaintiff prays that this court:

(A) Compel Defendants and those acting under them to perform their duty to immediately adjudicate Plaintiffs' I-914 Application for T Nonimmigrant Status and their I-192 Applications for Advance Permission to Enter as a Nonimmigrant;

(B) Hold unlawful and set aside Defendants' denial of Petitioners' bona fide determinations;

(C) Grant reasonable attorney's fees and costs of court under the Equal Access to Justice Act; and

(D) Grant any further relief this Court deems just and proper.

Respectfully Submitted
Eloisa Queiroz Gomes, Edilamar Erica
Barbosa Gomes, Adailton Rodrigues
Gomes, and E.D.A.G., a minor, Plaintiffs

By and through:

*s/ Annelise M. Jatoba de Araujo*

_____
Annelise M. Jatoba de Araujo
Araujo & Fisher, LLC
75 Federal St, Ste 910
Boston, MA 02110
T: 617-716-6400
C: 419-494-3051
F: 617-716-6403
*Counsel for Plaintiff*

Dated: July 10, 2025