UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| ELOISA QUEIROZ GOMES, EDILAMAR ERICA BARBOSA GOMES, ADAILTON RODRIGUES GOMES, and E.D.A.G., a minor, | * * * * * |  |
| Plaintiffs, | * * * |  |
| v. | * * | Civil Action No. 25-cv-11964-ADB |
| PAMELA BONDI, U.S. Attorney General; KIKA SCOTT, Senior Official Performing the Duties of the Director, U.S. Citizenship and Immigration Services; KRISTI NOEM, Secretary, U.S. Department of Homeland Security; LAURA B. ZUCHOWSKI, Director U.S. Citizenship and Immigration Services, Vermont Service Center; TODD M. LYONS, Acting Director, U.S. Immigration and Customs Enforcement; and PATRICIA HYDE, Acting Director of Boston Field Office, U.S. Immigration and Customs Enforcement, | * * * * * * * * * * * * * * | |
| Defendants. | * * | |

**MEMORANDUM AND ORDER**

BURROUGHS, D.J.

Plaintiffs, four Brazilian nationals, bring this suit against the federal government for failure to adjudicate their applications for T visas, a temporary immigration benefit available to certain noncitizens who are victims of trafficking and their family members. Specifically, they seek mandamus under 28 U.S.C. § 1361 (Count I), assert claims under the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(1), (2)(A) (Counts II and III) and the Fifth Amendment's Due Process Clause (Count IV), and request a declaration that they are entitled to

have their applications immediately adjudicated (Count V).  [ECF No. 1 ("Complaint" or "Compl.")].  Presently before the Court is the government's motion to dismiss for lack of subject-matter jurisdiction and failure to state a claim.  [ECF No. 18].  For the following reasons, that motion is **GRANTED IN PART** and **DENIED IN PART**.

## I.    BACKGROUND

### A.    Statutory Scheme

Under the Immigration and Nationality Act of 1952 ("INA"), a foreign citizen may, as a general matter, only enter the United States with either an immigrant or a nonimmigrant visa.  8 U.S.C. §§ 1181(a), 1182(a)(7).  The T visa is a temporary nonimmigrant visa, granted to certain victims of severe forms of human trafficking and certain eligible family members of such trafficking victims.  8 U.S.C. § 1101(a)(15)(T); Victims of Human Trafficking: T Nonimmigrant Status, U.S. Citizenship and Immigr. Servs., https://www.uscis.gov/humanitarian/victims-of-human-trafficking-t-nonimmigrant-status (last visited Apr. 17, 2026).

When a noncitizen applies for T nonimmigrant status, United States Citizen and Immigration Services ("USCIS") "will conduct an initial review to determine if the application is bona fide."  8 C.F.R. § 214.205(a).  USCIS "will deem" an application to be bona fide if "(i) [t]he applicant has submitted a properly filed and complete [application]; (ii) [t]he applicant has submitted a signed personal statement; and (iii) [t]he results of initial background checks are complete, have been reviewed, and do not present national security concerns."  Id. § 214.205(a)(2).  If a principal applicant's application has been deemed bona fide, USCIS similarly "will conduct" initial reviews of any derivative applications of eligible family members.  Id. § 214.205(b). "There are no motion or appeal rights for a bona fide determination upon initial review . . . ."  Id. § 214.205(d).

If initial review does not establish that the application is bona fide, the agency "will conduct a full T nonimmigrant status eligibility review," which can result either in approval of the application or in a bona fide determination.  8 C.F.R. § 214.205(a)(3).  USCIS conducts this secondary review "generally in order of application receipt date."  Id. § 214.205(d)(1).

Although the filing of a T visa application has no impact on the federal government's authority or discretion to execute a final order of removal, an applicant with a final order of removal may request an administrative stay of removal.  8 C.F.R. § 214.204(b)(2)(i).  If USCIS determines that an application is bona fide, "the final order of removal, deportation, or exclusion will be automatically stayed," pending a final decision on the application.  Id. § 214.204(b)(2)(iii).  And if the application is approved, the applicant "may seek rescission of [an outstanding order of removal issued by the U.S. Department of Justice] by filing a motion to reopen and terminate removal proceedings with the immigration judge or the Board [of Immigration Appeals.]"  Id. § 214.204(o)(2).

## B.    Factual Background

Plaintiffs are a family of four:  Eloisa Queiroz Gomes, her brother E.D.A.G., and her parents, Edilamar Erica Barbosa Gomes and Adailton Rodrigues Gomes.  [Compl. ¶¶ 1, 11].  They are Brazilian nationals.  [Id. ¶ 29].  An immigration judge denied their applications for asylum in September 2022, and their orders of removal became final on May 30, 2024.  [Id.].  On September 3, 2024, Queiroz Gomes filed an I-914 Application for T Nonimmigrant Status and a Form I-192 Application for Advance Permission to Enter as a Nonimmigrant, and her parents and brother filed derivative applications.  [Id. ¶¶ 2, 30].  On October 18, 2024, USCIS sent Plaintiffs letters telling them that it had determined that their applications were not bona fide.  [Id. ¶ 33]; [ECF No. 8-1].  The letter about Queiroz Gomes's application said that her

3

application was not bona fide "because it is not complete or [her] initial background checks present national security concerns." [ECF No. 8-1 at 2]. The letters about her family members' derivative applications said that the applications were not bona fide "because the principal's application was determined to not be bona fide or [her] family member's application is incomplete or [her] family member's application presents national security concerns." [Id. at 4, 6, 8]. Plaintiffs' applications had been pending for ten months when they filed their complaint, [Compl. ¶ 35], and remain pending now, more than eleven months later.

On June 4, 2025, during a check-in with Immigrations and Customs Enforcement ("ICE"), Barbosa Gomes was detained, [Compl. ¶ 31]; she was removed from the United States on or about August 27, 2025, Parties' Stipulation of Dismissal, ECF No. 26, Barbosa Gomes v. Hyde, No. 25-cv-11623 (D. Mass. Sep. 25, 2025).

### C.    Procedural History

On July 10, 2025, Plaintiffs filed this action, naming Pamela Bondi, Kika Scott, Kristi Noem, Laura B. Zuchowski, Todd M. Lyons, and Patricia Hyde as defendants. [Compl.]. On October 8, 2025, the Court noted that Plaintiffs had not filed proper proofs of service, and ordered them to file proof of service or show cause why the case should not be dismissed. [ECF No. 10].[1] Plaintiffs did not respond to the Court's order, so, on November 3, 2025, the Court dismissed the case for failure to prosecute. [ECF No. 12]. Plaintiffs then filed proofs of service

---

[1] The Court's order noted that Barbosa Gomes's removal likely rendered her claims moot. [ECF No. 10]. The government argues that her removal renders her statutorily ineligible for T nonimmigrant visa status because she is no longer physically present in the United States. [ECF No. 19 at 12 n.4 (citing 8 U.S.C. § 1101(a)(15)(T)(i)(II); 8 C.F.R. § 103.2(b)(1))]. Plaintiffs acknowledge Barbosa Gomes's removal, [ECF No. 22 at 6 n.2], and do not dispute the government's argument that it moots her claims. Accordingly, the government's motion is granted as unopposed as to Barbosa Gomes's claims.

and a motion to reinstate the case, [ECF Nos. 14, 15, 16], which the Court granted, [ECF No. 17].  On December 8, 2025, the government moved to dismiss, [ECF No. 18], and Plaintiffs opposed the motion on January 9, 2026, [ECF No. 22].

## II.   STANDARD OF REVIEW

### A.   Rule 12(b)(1)

In general, when evaluating a motion to dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure, the Court must determine whether the facts as alleged in the complaint, "taken at face value," support subject-matter jurisdiction.  Gordo-González v. United States, 873 F.3d 32, 35 (1st Cir. 2017).  When undertaking this evaluation, courts "apply the same plausibility standard used to evaluate a motion under Rule 12(b)(6)."  Gustavsen v. Alcon Lab'ys, Inc., 903 F.3d 1, 7 (1st Cir. 2018) (citing Hochendoner v. Genzyme Corp., 823 F.3d 724, 731 (1st Cir. 2016)).  The Court must therefore "accept the factual averments of the complaint as true, and construe those facts in the light most congenial to the [Plaintiff's] cause."  Royal v. Leading Edge Prods., Inc., 833 F.2d 1, 1 (1st Cir. 1987) (first citing Guessfeldt v. McGrath, 342 U.S. 308, 310 (1952); and then citing Chongris v. Bd. of Appeals, 811 F.2d 36, 37 (1st Cir. 1987)).

### B.   Rule 12(b)(6)

In a motion to dismiss under Rule 12(b)(6), the Court must accept as true all well-pled facts, analyze those facts in the light most favorable to the plaintiff, and draw all reasonable factual inferences in the plaintiff's favor.  See Gilbert v. City of Chicopee, 915 F.3d 74, 80 (1st Cir. 2019) (first citing Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 7 (1st Cir. 2011); and then citing Gargano v. Liberty Int'l Underwriters, Inc., 572 F.3d 45, 48 (1st Cir. 2009)).  "[A] complaint must provide 'a short and plain statement of the claim showing that the pleader is

entitled to relief,'" Cardigan Mountain Sch. v. N.H. Ins. Co., 787 F.3d 82, 84 (1st Cir. 2015) (quoting Fed. R. Civ. P. 8(a)(2)), and set forth "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory," Pitta v. Medeiros, 90 F.4th 11, 17 (1st Cir. 2024) (quoting Gagliardi v. Sullivan, 513 F.3d 301, 305 (1st Cir. 2008)). Although detailed factual allegations are not required, a complaint must set forth "more than labels and conclusions," Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007), and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Rather, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting Twombly, 550 U.S. at 570).

## III.    DISCUSSION

The government asserts that Plaintiffs' Complaint should be dismissed because (1) the Court lacks subject-matter jurisdiction over Plaintiffs' mandamus claim, [ECF No. 19 at 15–18]; (2) Plaintiffs APA claims fail because the government has no clear non-discretionary duty to act on their applications and adjudication of their applications is "well within normal processing time," [id. at 7–15]; and (3) Plaintiffs do not have a due-process right to have their applications adjudicated immediately upon denial of a bona fide determination or before their removal, [ECF No. 15–19]. Plaintiffs respond that (1) they have stated plausible mandamus and APA claims because the government has a duty to adjudicate their applications within a reasonable time, [ECF No. 22 at 4–7, 11]; (2) the Court either (A) cannot determine at this stage in the litigation whether the government's delay was unreasonable, [id. at 7–9], or (B) should hold that Plaintiffs have plausibly alleged that it was, [id. at 9–22]; and (3) the government's failure to explain its negative bona fide determinations violates the APA, [id. at 3–4].

### A. Unreasonable Delay (Counts I and II)

#### 1. Jurisdiction

The APA states that "within a reasonable time . . . each agency shall proceed to conclude a matter presented to it," 5 U.S.C. § 555(b), and that courts "shall . . . compel agency action unlawfully withheld or unreasonably delayed," id. § 706(1). "While the APA does not provide an independent source of subject matter jurisdiction," Conservation L. Found., Inc. v. Busey, 79 F.3d 1250, 1261 (1st Cir. 1996), the Mandamus and Venue Act ("MVA"), 28 U.S.C. § 1361, vests district courts with "original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." Regardless of whether this Court's subject-matter jurisdiction is grounded in the MVA, Durrani v. Bitter, No. 24-cv-11313, 2024 WL 4228927, at *2 (D. Mass. Sep. 18, 2024), or in 28 U.S.C. § 1331, see Plaskett v. Wormuth, 18 F.4th 1072, 1082 n.5 (9th Cir. 2021); Litvin v. Chertoff, 586 F. Supp. 2d 9, 11 (D. Mass. 2008), the Court clearly has the power to adjudicate Plaintiffs' unreasonable-delay claim under the APA, which is coextensive with their unreasonable-delay claim under the MVA. See, e.g., Tasneem v. Stufft, No. 25-cv-30072, 2026 WL 905311, at *7 (D. Mass. Mar. 31, 2026) (considering APA and MVA claims together); Rezaii v. Kennedy, No. 24-cv-10838, 2025 WL 750215, at *4 n.3 (D. Mass. Feb. 24, 2025) (noting that plaintiff's "mandamus relief claims 'ris[e] and fal[l] with [his] ability to state a claim under the APA'" and "only analyz[ing] the merits of the unreasonable administrative delay claim under the APA" (quoting Muniz v. Miller, No. 23-cv-11075, 2024 WL 624827, at *6 n.1 (D. Mass. Feb. 14, 2024))); Vaz v. Neal, 33 F.4th 1131, 1135 (9th Cir. 2022) ("elect[ing] to analyze the APA claim only," where complaint sought relief under the MVA and the APA). Such a claim "can proceed only where a plaintiff asserts that an agency failed to take a discrete agency

7

action that it is required to take."  Norton v. S. Utah Wilderness All., 542 U.S. 55, 64 (2004) (emphasis omitted).

Here, Plaintiffs contend that 8 C.F.R. § 214.205(a)(3), which states that USCIS "will conduct a full T nonimmigrant status eligibility review" after a negative bona fide determination, provides a nondiscretionary or mandatory duty to act.  [ECF No. 22 at 4–5].  Further, 8 U.S.C. § 1202(d) provides that "[a]ll nonimmigrant visa applications shall be reviewed and adjudicated by a consular officer."  Because other sections of the INA "appear to grant near-total discretion to grant or deny visa applications," Durrani, 2024 WL 4228927, at *2 (citing 8 U.S.C. §§ 1104(a), 1201(a)), courts are split as to whether § 1202(d) creates a nondiscretionary duty, compare Oladoja v. U.S. Dep't of State, No. 24-cv-01143, 2025 WL 880010, at *5 (D.N.J. Mar. 21, 2025) ("Under the plain language of the statute, Defendants have a mandatory, nondiscretionary duty to adjudicate visa applications pursuant to Sections 1202(b) and (d)."), Gomez v. Trump, 485 F. Supp. 3d 145, 198 n.23 (D.D.C. 2020) (same), Shabani v. Rubio, No. 24-cv-00444, 2025 WL 1085075, at *5–6 (W.D. Va. Apr. 10, 2025) (holding that § 1202(d), together with the implementing regulation found in 22 C.F.R. § 41.121(a), establishes a nondiscretionary duty for consular officers to review and adjudicate visa applications), and Yaghoubnezhad v. Stufft, 734 F. Supp. 3d 87, 99–100 (D.D.C. 2024) (same), with Mueller v. Blinken, 682 F. Supp. 3d 528, 535–37 (E.D. Va. 2023) (finding no mandatory, nondiscretionary duty under § 1202(b), and collecting cases).  That said, courts within the First Circuit have "typically found a 'nondiscretionary duty on consular officials to act upon a visa or naturalization petition without unreasonable delay.'"  Durrani, 2024 WL 4228927, at *2 (quoting Conley v. U.S. Dep't of State, 731 F. Supp. 3d 104, 109 (D. Mass. 2024)).  This Court, for purposes of this motion, declines to find differently and accordingly has jurisdiction over

Plaintiffs' claims that the government failed to perform their mandatory duty to act upon their applications without unreasonable delay. The government's motion to dismiss for lack of subject-matter jurisdiction is **DENIED**.

### 2. Reasonableness of Delay

To evaluate whether agency action is unreasonably delayed, courts in the First Circuit apply the six-factor test set forth in Telecommunications Research & Action Center v. F.C.C. (TRAC), 750 F.2d 70, 80 (D.C. Cir. 1984). The TRAC factors are:

> (1) the time agencies take to make decisions must be governed by a rule of reason; (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority; (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is "unreasonably delayed."

Id. (citation modified). The first factor is the "most important," In re Core Commc'ns, Inc., 531 F.3d 849, 855 (D.C. Cir. 2008), and courts have also described the fourth factor as "carr[ying] the greatest weight in many cases," Giliana v. Blinken, 596 F. Supp. 3d 13, 22 (D.D.C. 2022) (quoting Milligan v. Pompeo, 502 F. Supp. 3d 302, 319 (D.D.C. 2020)), but courts must "consider them all," In re A Cmty. Voice, 878 F.3d 779, 786 (9th Cir. 2017).

As a threshold matter, the Court observes that whether the TRAC factors are appropriately assessed at the pleading stage is an unresolved question in the First Circuit. Rezaii, 2025 WL 750215, at *4–5 (collecting cases). That said, "most sessions [within this Court], evaluate the TRAC factors at the motion to dismiss stage." Id. at *4. Here, to the extent that

9

Plaintiffs argue that the fact-intensive inquiry into the reasonableness of the government's delay is premature at this juncture, [ECF No. 22 at 7–9], the Court notes that they must nonetheless plead "sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570); see also Durrani, 2024 WL 4228927, at *3 (acknowledging that the TRAC factors are fact-intensive, but determining that the court must "evaluate the facts pleaded in the complaint and determine whether they plausibly state a claim for relief under the applicable law"); Da Costa v. Immigr. Inv. Program Off., 643 F. Supp. 3d 1, 12 (D.D.C. 2022) ("There is no categorical prohibition on deciding unreasonable-delay claims at the motion-to-dismiss stage, so the question of whether discovery is necessary depends, as with any sort of claim, on the particular Complaint."), aff'd, 80 F.4th 330 (D.C. Cir. 2023).  Although there may be "cases in which discovery might be required before the TRAC factors can offer meaningful guidance," this Court agrees that "courts can, at least in some cases, determine at the pleading stage whether an unreasonable delay claim may proceed." Patel v. Noem, 788 F. Supp. 3d 950, 957 (N.D. Ill. 2025) (citing Romero v. Scott, No. 24-cv-04372, 2025 WL 815071, at *4 (N.D. Ill. Mar. 12, 2025)).  Here, the TRAC factors show that Plaintiffs do not state a plausible unreasonable-delay claim.

The first two TRAC factors are usually considered together.  Dastagir v. Blinken, 557 F. Supp. 3d 160, 165 (D.D.C. 2021).  The first factor asks "whether the agency's response time . . . is governed by an identifiable rationale," Ctr. for Sci. in the Pub. Int. v. U.S. Food & Drug Admin., 74 F. Supp. 3d 295, 300 (D.D.C. 2014), and the second looks at whether "Congress has provided a timetable" that "may supply content for th[e] rule of reason," TRAC, 750 F.2d at 80.  When "Congress has not provided a statutory or regulatory timeframe in which to adjudicate visa applications," courts "turn to case law as a guide." Yacoub v. Blinken, No. 21-

10

cv-00983, 2022 WL 4598681, at *4 (D.D.C. Sep. 30, 2022) (quoting Sarlak v. Pompeo, No. CV 20-35, 2020 WL 3082018, at *6 (D.D.C. June 10, 2020)).

"[C]ourts have consistently found that the government follows a 'rule of reason' when petitions are processed, by and large, 'in the order they were filed.'" Durrani, 2024 WL 4228927, at *4 (quoting Memon v. Blinken, No. 22-cv-00754, 2023 WL 1438396, at *2 (D.D.C. Feb. 1, 2023)). Here, by regulation, the government processes T visa applications determined not to be bona fide "generally in order of application receipt date." 8 C.F.R § 214.205(d)(1). Plaintiffs' argument that "there is no information before the Court at this juncture indicating how USCIS actually administers its first in, first out system," [ECF No. 22 at 9], is not persuasive, because it relies on caselaw holding that the TRAC analysis cannot be conducted at the motion-to-dismiss stage, which is contrary to the approach of most sessions of this Court, see [id. (citing Gonzalez v. Cuccinelli, 985 F.3d 357, 376 (4th Cir. 2021); Gonzalez v. U.S. Dep't of Homeland Sec., 500 F. Supp. 3d 1115, 1130 (E.D. Cal. 2020))]. Moreover, Plaintiffs point to no statute or caselaw supporting their contention that the alleged approximately twenty-month delay here— that is, the period of time since Plaintiffs' applications were deemed not bona fide—is unreasonable. See, e.g., Sarlak, 2020 WL 3082018, at *6 (noting that, while "[n]o bright lines have been drawn . . . '[d]istrict courts have generally found that immigration delays in excess of five, six, seven years are unreasonable, while those between three to five years are often not unreasonable'" (quoting Yavari v. Pompeo, No. 19-cv-02524, 2019 WL 67200995, at *8 (C.D. Cal. Oct. 10, 2019))). Although processing times for T visa applications have increased considerably since Plaintiffs filed their applications, the median processing time for T visa applications for Fiscal Year 2026 (through April 30, 2026) was 28.2 months, and eighty percent of such applications are currently being adjudicated within 30.5 months, both of which figures

significantly exceed the delay that Plaintiffs allege here.  Historical National Median Processing Time (in Months) for All USCIS Offices for Select Forms by Fiscal Year, U.S. Citizenship and Immigr. Servs., https://egov.uscis.gov/processing-times/historic-pt (last accessed June 24, 2026); Case Processing Times, U.S. Citizenship and Immigr. Servs., https://egov.uscis.gov/processing-times (last accessed June 24, 2026).  Accordingly, the first and second TRAC factors weigh against a finding of unreasonable delay.

The third and fifth factors are also ordinarily assessed together and relate to the "interests prejudiced by the delay," including the "impact on human health and welfare and economic harm."  Liberty Fund, Inc. v. Chao, 394 F. Supp. 2d 105, 118 (D.D.C. 2005).  Plaintiffs claim that the delay in adjudicating their applications has brought about "enormous hardships," [ECF No. 22 at 2], including the arrest, detention, and removal of Barbosa Gomes, which has resulted in the separation of Plaintiffs' family, and the threat that "the government may deport the remainder of them at any time," [id. at 10].  Most of these alleged harms "do not," unfortunately, "materially distinguish [Plaintiffs'] circumstances from those of the countless other" T-visa applicants.  Ghannad-Rezaie v. Laitinen, 757 F. Supp. 3d 148, 155–56 (D. Mass. 2024) (citing Durrani, 2024 WL 4228927, at *5); see also Memon, 2023 WL 1438396, at *3 ("In general, concerns about separation from family . . . are insufficient to weigh in favor of the plaintiff."); R.O.A. v. Edlow, 805 F. Supp. 3d 565, 578 (D. Vt. 2025) ("[M]ost T visa . . . applicants . . . lack legal status in this country and are, therefore, at risk of removal.").  Plaintiffs' allegation that they face imminent removal, however, which is supported by the government's removal of one of the Plaintiffs, does appear to set them apart.  See R.O.A., 805 F. Supp. 3d at 578 (finding that "[h]uman welfare is certainly at stake" where T-visa applicant subject to negative bona fide determination had lived in United States for 25 years and "fac[ed] imminent removal," which

12

would cause him to lose opportunity to receive a T visa); Byrne v. Noem, No. 25-cv-1077, 2025 WL 2414159, at *5 (E.D. Pa. Aug. 20, 2025) (finding that T-visa applicant who alleged that (1) he was subject to final order of removal and due to check in with ICE and (2) his family would be separated if he were deported "ha[d] shown that he [was] facing imminent harm," in light of government's "program of 'massive deportation'" of individuals with existing removal orders); Garcia v. Noem, No. 3:25-cv-06008, 2025 WL 3237502, at *1 (W.D. Wash. Nov. 20, 2025) (finding third and fifth TRAC factor weighed in favor of T-visa applicant who was detained and had received notice of her imminent removal because applicant "clearly would suffer hardships in being removed"); cf. Barrios Garcia v. U.S. Dep't of Homeland Sec., 25 F.4th 430, 452 (6th Cir. 2022) (finding third and fifth TRAC factors favored U-visa applicants alleging that USCIS had unreasonably delayed deciding whether to place them on U-visa waitlist where applicants were allegedly unable to "obtain a social-security number or identification cards[,] . . . "garner healthcare, car insurance, or lawful employment," and "risk[ed] removal from the United States"). Although many T-visa applicants are subject to final orders of removal—a situation plainly contemplated by applicable regulations, which provide applicants with several different avenues for temporary and permanent relief from removal, 8 C.F.R. § 214.204(b)(2), (o)(2)— Plaintiffs' fear that they will be removed in the imminent future appears far from speculative. Thus, on balance, the third and fifth TRAC factors weigh in favor of a finding of unreasonable delay.

The fourth TRAC factor requires an assessment of "the effect of expediting delayed action on agency activities of a higher or competing priority." TRAC, 750 F.2d at 80. Courts have generally "declined to move plaintiffs to 'the head of the queue' because doing so would 'simply move[] all others back one space and produce[] no net gain.'" Durrani, 2024 WL

13

4228927, at *5 (citation modified) (quoting Mashpee Wampanoag Tribal Council, Inc. v. Norton, 336 F.3d 1094, 1100 (D.C. Cir. 2003)).  Moving Plaintiffs to the "'front of the line' would come at the expense of others who shoulder equally taxing burdens."  Akter v. Rubio, 805 F. Supp. 3d 37, 47 (D.D.C. 2025) (quoting Dastagir, 557 F. Supp. 3d at 168).  The fourth TRAC factor, accordingly, weighs against a finding of unreasonable delay.

Finally, because Plaintiffs allege no facts suggesting bad faith or impropriety on the part of the government, [ECF No. 22 at 11], the sixth TRAC factor weighs neutrally in the Court's analysis.  See Palakuru v. Renaud, 521 F. Supp. 3d 46, 53 (D.D.C. 2021).

In sum, the first, second, and fourth TRAC factors favor the government, the third and fifth TRAC factors favor Plaintiffs, and the sixth TRAC factor is neutral.  Weighing the factors, and according particular weight to the first and fourth factors, the Court concludes that Plaintiffs have failed to state a claim for unreasonable delay under the APA or the MVA.  See, e.g., Novack v. Miller, 727 F. Supp. 3d 70, 78 (D. Mass. 2024) (dismissing unreasonable-delay claim where all factors except factors three and five favored the government); Kaur v. Mayorkas, No. 22-cv-4514, 2023 WL 4899083, at *12 (S.D.N.Y. Aug. 1, 2023) (dismissing unreasonable-delay claim where "the first and fourth TRAC factors weigh[ed] strongly in defendants' favor[,] the second, third, and fifth TRAC factors weigh[ed] in plaintiffs' favor, albeit modestly[,] and the sixth TRAC factor [was] neutral"); accord Aghamohammadi v. Rubio, No. 24-cv-02801, 2025 WL 2687343, at *15 (D. Md. Sep. 19, 2025) ("Because the standard by which a court reviews . . . agency inaction is the same under both § 706(1) of the APA and the Mandamus Act, Plaintiffs have failed to state a claim for mandamus." (quoting Jahangiri v. Blinken, No. 23-cv-

14

02722, 2024 WL 1656269, at *14 (D. Md. Apr. 17, 2024))).  The government's motion to dismiss for failure to state a claim is **GRANTED** as to Counts I and II.[2]

### B.  Bona Fide Determination (Count III)

Plaintiffs allege that the government's bona fide determinations violated 5 U.S.C. § 706(2)(A), which permits federal courts to hold unlawful and set aside agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," because Queiroz Gomes's primary application was complete and there was no basis to find that she presented a national-security concern.  [Compl. ¶¶ 58–67].  The government has not specifically addressed this claim in its motion-to-dismiss briefing.  See [ECF No. 19].  Accordingly, its motion to dismiss is **DENIED** as to Count III.

### C.  Due Process Claim (Count IV)

Plaintiffs claim that the government's delay in adjudicating their applications violates their due-process rights under the Fifth Amendment to the U.S. Constitution.  [Compl. ¶¶ 68–75].  Not only do Plaintiffs seemingly abandon these claims in their opposition, see [ECF No. 22], but, in any case, they have failed to allege deprivation of a constitutionally protected interest.  See Taha v. Blinken, 765 F. Supp. 3d 91, 96 (D. Mass. 2025).  Accordingly, the government's motion to dismiss is **GRANTED** as to Count IV.

---

[2] Although the Court concludes that, at present, Plaintiffs have not stated an unreasonable-delay claim, it notes that other courts have granted preliminary relief or denied motions to dismiss in cases with comparable, or even slightly shorter, delays.  See, e.g., R.O.A., 805 F. Supp. 3d at 578 (finding 14.5-month delay in adjudicating T visa application unreasonable); Byrne, 2025 WL 2414159, at *5 (finding 17-month delay in processing T visa application unreasonable).  To state the obvious, the longer the government delays in adjudicating Plaintiffs' applications, the more likely it is that the TRAC factors will tip in Plaintiffs' favor, especially given the prejudice that Plaintiffs are suffering from the government's delay in adjudicating their applications.

**D. Declaratory Judgment (Count V)**

Plaintiffs ask the Court "to declare that Plaintiffs are entitled to have their T visa applications and waiver applications immediately adjudicated." [Compl. ¶ 77]. Because Plaintiffs have not plausibly alleged that this is the case, the government's motion is **GRANTED** as to Count V. See, e.g., LIMO GmbH v. VulcanForms Inc., No. 24-cv-12838, 2025 WL 2146335, at *8 (D. Mass. July 28, 2025) ("Where . . . the Court concludes that [the plaintiff's] underlying claims shall be dismissed for failure to state a claim under Rule 12(b)(6), dismissal of [the plaintiff's] claim for declaratory judgment is likewise warranted." (citing Buffalo-Water 1, LLC v. Fid. Real Est. Co., LLC, 111 N.E.3d 266, 272 (Mass. 2018))).

## IV. CONCLUSION

For the reasons set forth above, the government's motion to dismiss, [ECF No. 9], is **GRANTED IN PART** and **DENIED IN PART**. Counts I, II, IV, and V of the Complaint are dismissed without prejudice. This case will proceed on Count III.

**SO ORDERED.**

June 24, 2026                                                   */s/ Allison D. Burroughs*
                                                               ALLISON D. BURROUGHS
                                                               U.S. DISTRICT JUDGE